### HUDEPOHL BREWING CO. et al. v. HEHLE.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1919.)

#### No. 3246.

PATENTS ⬥328—NOVELTY—DISCLOSURE.

The Hehle patent, No. 1,154,989, for "improvements in brewing process," *held* void for want of patentable novelty and for failure to disclose how to practice invention after patent expires.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Boniface Hehle against the Hudepohl Brewing Company and another. From interlocutory decree for injunction and accounting, defendants appeal. Reversed.

Walter F. Murray, of Cincinnati, Ohio, for appellants.
Alfred M. Allen, of Cincinnati, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The court below entered the usual interlocutory decree for injunction and accounting in an infringement suit brought against the Hudepohl Brewing Company and another, by Boniface Hehle, upon patent No. 1,154,989, issued to him September 28, 1915, for "improvements in brewing processes."

The technical matters involved may be sufficiently understood without detailed explanation. In the brewing process, the barley (or substituted grain) is first, by germination, converted into malt and dried. The malt is then ground, and the ground product is placed in a vat—the mash tun—and subjected to what is called the mashing process, which may roughly be described as soaking and leaching. The final step of this process is called sparging. In it hot water is sprayed upon the mass from above, percolates down through the then remaining portion of the ground malt, which serves as a filter bed, and carries away in solution some desired elements of the malt. The total product of the mash is a sweet liquor, called wort, and this is the basis of further steps in brewing.

It is the claim of Hehle, both in his patent and in his testimony, that the malt-grinding machines and methods in use before his invention, did not break up the hard ends of the husk, called the "steely" ends, and therefore did not expose to the action of the liquid that portion of the malt contained in these ends, and that such machines and methods did not leave the husk in the best form to serve as a filter bed. He said:

"In carrying out my process, I first grind the grain in such manner that its husks are split longitudinally from end to end, so that the meal contents are free to fall out or be otherwise exposed to enzymatic action and water during the mashing and sparging process. * * * After the husks of the grains have been split lengthwise in the process of grinding, as above described, they are placed in the mash tun, where they constitute a uniform filter-bed through which the sparging liquid uniformly percolates and extracts all the desirable elements from the meal."

He claims:

"1. The process of splitting grains longitudinally, and subjecting the same to the heated sparging liquid."

Hehle also devised a machine for grinding the malt, so as to split the husks longitudinally. He accomplished this by a special arrangement of peculiar corrugations upon the grinding rolls, but he makes no reference whatever in the specification to such machine, or to any means or method of accomplishing this result. It does not appear that any patent was issued upon the machine, but it has gone upon the market

to a considerable extent, and the evidence strongly tends to show that when the grain is ground in it and then subjected to the mashing and sparging steps, the process is distinctly more efficient than where the malt is ground in some other way. Since the materials involved are consumed on so large a scale, the aggregate saving is very great. There is no room to doubt the utility of the improvement which Hehle accomplished by his machine and process; but that composite utility is of no importance upon the substantial question here involved.

We find some confusion in the arguments as to whether this patent is for a grinding process or for a brewing process. If it were for a grinding process and were in due form, Hehle's contentions, both as to validity and as to infringement, would be very forcible; but we cannot give it that character. Either one of two reasons is sufficient to compel this conclusion. One reason is that the patentee names his invention as an improvement in a brewing process, and, by his claim, calls only for a combination of two steps, which combination is a brewing process. He does not claim any characteristic element in either step. His claim was obviously intended to secure a monopoly upon subjecting to the hot water sparging process grain which had previously been split longitudinally by any method whatever. The other reason is that the specification does not assume to disclose any device or process for splitting the grain longitudinally; it assumes that the person to whom it is addressed will know how to do this; and if the invention and patent were to be considered as for a grinding process, the patent would clearly be void for lack of disclosure.

When we approach the patent from the viewpoint that it is for a process of brewing, we find it to be conceded that there is nothing new in the combination claimed, except the peculiar form of the ground product which was to be treated. Any patentable novelty in this form and in its combination with the other step of the process must rest upon one of three bases: First, novelty in the existence of this form; second, novelty in the peculiar means by which it was produced; third, novelty in the thought that the grain should be put into this form in order to be most useful in this process. We may at once reject the second of these bases, for the reason already stated—that there is no disclosure whatever nor any claim that Hehle had invented any peculiar means of producing this result.

As to the first suggested base, we are not sure that Hehle intends to stand upon it. Confessedly it imports no complete novelty. The form and the adjustment of the grinding rolls, in order to get the product in the best condition for the mash, had been extensively studied and developed by millwrights and brewmasters. It is quite obvious that, in any grinding, by stones or by rolls, there will be a tendency in the grains to present themselves with their shortest diameter across the grinding space, and therefore in part with their length arranged parallel with the grinding surfaces, and that this would often result in splitting the hull lengthwise. This inference is confirmed by examining samples of the product produced by Hehle's machine, and claimed to be that contemplated by the patent, and samples of that produced by the other and older machines and conceded not to

be the product in question. In the product of the earlier process, a considerable share of the husks is split lengthwise, and in the Hehle product, a considerable share of them is not split lengthwise. The unexpert eye does not easily distinguish between the two. The most that can fairly be said for Hehle in this respect, if we give him the benefit of all doubts, is that, in his machine, there was a deliberate purpose to split the husks lengthwise, which purpose was successful enough to give character to the product, while, in the older devices, such lesser lengthwise splitting as occurred was incidental. This situation leads us naturally to infer that it was not new to grind malt so as to split the hulls lengthwise; and, if there were doubt about this, it would be removed by the facts still to be mentioned.

This leaves for examination only the third suggested base of patentable invention, viz. the thought or conception that the hulls should be split lengthwise in order to get the best result in the mash. For the purposes of this opinion, at least, we may concede that, if Hehle had been the first in this conception, it would not have been necessary for him to teach any way in which the millwright should shape his rolls to get this result, and that the known existence of grain which was partly in this form after grinding, and the possibility of getting it in that form by sufficient pains and expense, would be sufficient to justify naming its employment as one of the steps in the process. However, Hehle was not the first in this conception. In a standard manual of brewing and malting, the Wahl-Henius American Hand-Book, published in 1901, it is said:

"The object of the malt mill is to crush the malt for extraction in the mash tun. The malt should not be crushed too fine, as such treatment will impair the running of the wort. Only smooth rollers should be used for crushing, and the hull should be split open lengthwise and not torn, as will happen if corrugated rollers are used."

Hehle makes no answer to the claim that this text-book discloses an earlier conception of the thought or idea, upon which alone he can stand as the basis of a valid patent, except to say that the Wahl-Henius book proposed to keep the hulls as nearly whole as possible and merely split them open, and that, in truth, corrugated rollers, as used by Hehle, are better than smooth rollers, because the former, properly arranged, will tear the hull into lengthwise shreds, and the hulls in this condition make a better filter bed than if they are merely split open with as little disturbance as possible. It may be true that to split the kernels lengthwise from end to end by corrugated rollers properly arranged leaves both meal and hulls in better condition for the mash than if the grains are split open lengthwise by smooth rollers; but the patent says nothing about all this. The idea that the grain ought to be split open lengthwise was fully disclosed by Wahl-Henius, and Hehle discloses nothing more. If common knowledge of how to do it is to be assumed, in order to make Hehle's disclosure sufficient, it will have the same effect upon Wahl-Henius.

It results that there was no patentable novelty in the process described by Hehle; if he made a valuable invention, as perhaps he did, he did not perform his part of the bargain which supports the issue

of a patent; he has not told the public how to practice the invention after the patent expires. Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 644, 20 L. Ed. 860.

The decree must be reversed, and the bill of complaint dismissed.